U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

AUG – 5 2015

TONY R. MOORE, CLERK
BY _____
          DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **WILLIE DELORES KING** | **CIVIL ACTION NO. 14-1249** |
| **VERSUS** | **JUDGE TRIMBLE** |
| **CHRISTUS HEALTH, CHRISTUS HEALTH CENTRAL LOUISIANA, CHRISTUS CONTINUING CARE d.b.a. CHRISTUS DUBUIS HOSPITAL OF ALEXANDRIA, CHRISTUS DUBUIS HOSPITAL OF ALEXANDRIA** | **MAGISTRATE JUDGE KIRK** |

## MEMORANDUM RULING

Before the court is a Motion for Summary Judgment filed by Defendants Christus Health, Christus Health Central Louisiana, Christus Continuing Care d.b.a. Christus Dubuis Hosptial of Alexandria and Christus Dubuis Hospital of Alexandria.[1]  For the reasons expressed herein below, the court finds that no genuine issue of material fact exists to preclude summary judgment in favor of Defendants and, accordingly, the instant motion should be granted in full.

I.      BACKGROUND

**Relevant Facts**

Plaintiff, Willie Delores King, is a former employee of Christus Continuing Care d.b.a. Christus Dubuis Hospital of Alexandria ("Christus").  Plaintiff was hired by Christus as an LPN in February of 2003.[2]  On August 3, 2010, Plaintiff sustained injury to her rotator cuff while

---

[1] R.17.
[2] Deposition of King [R. 17-4] at 17:8-11.

helping to move a 300-pound patient from his bed to a chair.[3]  Plaintiff held out her arm to catch the patient, who began to roll off the AirPal mattress upon which he was being moved by Plaintiff and several of her fellow Christus employees.[4]  Plaintiff asserts that bracing the patient with her arm was the cause of her rotator cuff injury.[5]

Plaintiff reported her injury to her supervisor and was placed on light duty status until her shoulder surgery on December 7, 2010.[6]  She also began receiving workers' compensation benefits and twelve (12) weeks' leave under the Family Medical Leave Act ("FMLA") at that time.[7]

Plaintiff's FMLA leave expired on or about March 1, 2011.  Plaintiff was unable to return to work on that date and requested an extension of her leave, presenting Christus with an "Attending Physician's Statement."[8]  Christus granted Plaintiff's request for additional leave, certifying her continued leave until April 7, 2011.[9]

Plaintiff was again unable to return to work on April 7, 2011 and requested a second extension of leave.[10]  Christus granted Plaintiff's request and approved extended leave for her through June 7, 2011.[11]  Plaintiff's physician, Dr. Michael Brunet, provided Christus a status report on June 2, 2011, stating that Plaintiff had an appointment in two (2) weeks for a

---

[3] Id. at 48:8-13.
[4] Id. at 49:8-20.
[5] Id. at 49:23 – 50:6.
[6] Id. at 50:10-13.
[7] Id. at 50:14-17; 77:6-9.
[8] Id. at 52:25 – 53:15; Notification of Leave Extension Approval and Attending Physician's Statement [R. 17-10].
[9] R. 17-10.
[10] Application for Leave Extension [R. 17-11].
[11] Notification of Leave Extension Approval [R. 17-11].

functional capacity evaluation ("FCE").[12]  After review of the status report, Christus terminated Plaintiff's employment as of June 7, 2011.[13]

Dr. Brunet released Plaintiff to return to work on June 30, 2011 with the following restrictions:  (1) "medium duty" work; (2) no lifting greater than 50 pounds from the floor to the waist; (3) no lifting greater than 35 pounds from the waist to the shoulder; and (4) no overhead lifting of any sort.[14]  Plaintiff contacted Gaye Beck, who was then the Senior Human Resources Benefits Specialist with Christus Dubuis, to inquire about reemployment as an LPN, given Dr. Brunet's restrictions.[15]  Beck told Plaintiff that her restrictions prevented her from performing all the necessary duties of an LPN and that reemployment as an LPN under "light duty status" such as Plaintiff previously enjoyed while awaiting her surgery was not possible.[16]  Thereafter, Plaintiff spoke with a Christus recruiter, who informed her that there were no available positions at the hospital for which Plaintiff was qualified at that time.[17]  Christus hired a vocational rehabilitation expert to help identify jobs for which Plaintiff would be qualified, given her restrictions.  Of the prospective jobs identified by the vocational rehabilitation expert, Dr. Brunet did not approve her to work in several which he felt required more lifting than he would recommend for Plaintiff, including at least one LPN position.[18]  Plaintiff was not selected for other prospective positions because of her qualifications or because the job was filled prior to her application.[19]

---

[12] Workers' Compensation Status Report of 6/2/2011 [R. 17-12].
[13] R. 1 at ¶ 13.
[14] Workers' Compensation Status Report of 6/30/2011 [R. 17-13].
[15] Deposition of King [R. 17-4] at 102:10-15.
[16] Id. at 102:22 – 103:2; 115:2-10.
[17] Id. at 111:11-16.
[18] Id. at 88:3-9; 94:22 – 95:17.
[19] Id. at 77 – 95.

Plaintiff filed a charge of disability discrimination with the Equal Employment Opportunity Commission ("EEOC") and the Louisiana Commission on Human Rights in December of 2011.[20] The EEOC issued its determination on November 22, 2013, finding that Christus' failure to grant Plaintiff a third extension of leave based on Dr. Brunet's workers' compensation status report of June 30, 2011 amounted to the denial of reasonable accommodation.[21] The EEOC subsequently issued Plaintiff Notice of Right to Sue on May 27, 2014.[22] Plaintiff filed the instant suit on June 16, 2014, alleging violation of the Americans with Disabilities Act ("ADA") and the Louisiana Employment Discrimination Law ("LADL").[23]

Defendants come now before the court seeking summary judgment as to Plaintiff's claims against them, asserting that Plaintiff's claims fail as a matter of law and no genuine issue of material fact exists which would preclude judgment in their favor.  All necessary briefs have been received and the court finds the motion ripe for decision.

### Applicable Standard

Fed. R. Civ. P. 56(a) provides that summary judgment shall be granted when the movant shows the absence of any genuine dispute as to any material fact and, for that reason, shows that he is entitled to judgment as a matter of law.  The movant must demonstrate the absence of any genuine dispute as to any material fact by citing to particular parts of materials in the record, including depositions, documents and affidavits.[24]  The movant may demonstrate entitlement to judgment as a matter of law by pointing out the nonmoving party's inability to produce evidence which, when taken as true for the purposes of the motion, would provide a

---

[20] Deposition of King [R. 17-4] at 95:18-20.
[21] R. 1-3.
[22] R. 1-2.
[23] R. 1, generally.
[24] Fed. R. Civ. P. 56(c)(1)(A).

legally sufficient basis upon which a reasonable jury might base a judgment in the nonmoving party's favor.[25]

Once a motion for summary judgment is made and properly supported, the burden shifts to the nonmoving party to come forward with evidence which demonstrates the essential elements of his claims.[26] In so doing, the nomoving party establishes the existence of a genuine issue of material fact for trial.  The nonmoving party must show that the evidence, when viewed in the light most favorable to him, is sufficient to enable a reasonable jury to render a verdict in his favor.[27]  A party whose claims are challenged by a motion for summary judgment may not rest on the allegations of the complaint and must articulate specific factual allegations which meet his burden of proof.[28]

If the nonmoving party meets his burden of proof, summary judgment is inappropriate and the claims must be preserved for further proceedings.  If, on the other hand, the nonmoving party does not meet his burden, the court must grant summary judgment in recognition of the implausibility of the claims at issue.[29]

All evidence submitted to the court in support of or in opposition to a motion for summary judgment must be of the sort which would be admissible at the trial of the matter.[30] "Metaphysical doubt" as to the existence of a genuine issue for trial is insufficient, as are

---

[25] Celotex Corp v. Catrett, 477 U.S. 317, 2553 – 54 (1986); Duffy v. Leading Edge Products, Inc., 44 F.3d 308, 312 (5th Cir. 1995); Shotak v. Tenneco Resins, Inc., 953 F.2d 909, 913 (5th Cir. 1992), cert. denied 506 U.S. 832 (1992).
[26] Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); Little v. Liquid Air Corp., 37 F.3d 1069 (5th Cir. 1994).
[27] Celotex, 477 U.S. at 325.
[28] Id.
[29] Id. at 322.
[30] Fed. R. Civ. P. 56(c)(2); Salas v. Carptener, 980 F.2d 299, 305 (5th Cir. 1992) quoting Broadway v. City of Montgomery, 530 F.2d 657, 661 (5th Cir. 1976).

"unsubstantiated assertions" and "conclusory allegations[.]"[31]   The court will construe all evidence in the light most favorable to the nonmoving party, but will not infer the existence of evidence not presented.[32]

## II.   ANALYSIS

The ADA prohibits covered entities from engaging in workplace discrimination against a qualified individual on the basis of disability.[33]   The ADA defines prohibited discrimination to include, among other things, an employer's failure to offer "reasonable accommodation" to an otherwise qualified employee who is disabled within the meaning of the law.[34]   An employer is not required, however, to offer accommodations which would impose upon it an undue hardship on its business operations.[35]

A plaintiff alleging disability discrimination in the form of failure to accommodate must demonstrate the following statutory elements: (1) that she is a qualified individual with a disability; (2) that the disability and its consequential limitations were known by her covered employer; and (3) that her employer failed to make "reasonable accommodations" for her known disability.[36]   Plaintiff's burden is the same with respect to her claims under the LADL, therefore, our analysis will apply to all claims, whether based upon federal or state law.[37]

Christus' motion asserts that Plaintiff's failure to accommodate claims are subject to dismissal because Plaintiff is unable to demonstrate: (1) that she was qualified for the position

---

[31] Little, 37 F.3d at 1075, citing Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986), Lujan v. National Wildlife Federation, 497 U.S. 871, 871-73 (1986); Hopper v. Frank, 16 F.3d 92 (5th Cir. 1994).
[32] Lujan, 497 U.S. at 888.
[33] 42 U.S.C. § 12112(a).
[34] 42 U.S.C. § 12112(b)(5).
[35] Id.
[36] Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen., 730 F.3d 450, 452 (5th Cir. 2013) (internal citations omitted).
[37] Smith v. Amedisys, Inc., 298 F.3d 434, 448 (5th Cir. 2002) (internal citations omitted).

of LPN at Christus; and (2) that Christus failed offer her "reasonable accommodation" in this case.

Christus provides its LPN job description as evidence that Plaintiff was not qualified for employment as an LPN following her injury and subsequent shoulder surgery.[38] Christus points out that its LPNs are required to lift or carry weight 25 – 49% of each shift.[39] On average, LPNs are required to carry 2 – 30 pounds at least 50% of the time; 31 – 50 pounds approximately 25% of the time; and 51 or more pounds less than 25% of the time.[40] Citing Dr. Brunet's restrictions – no overhead lifting, no weight greater than 50 pounds from the floor to her waist and no weight greater than 35 pounds from her waist to her shoulders – Christus asserts that Plaintiff was unqualified to perform the lifting and carrying duties of an LPN, which it claims are "essential functions" of the job.[41]

Plaintiff does not dispute the veracity of Dr. Brunet's restrictions, but cites an LPN job description from the Dictionary of Occupational Titles ("DOT") as evidence that she is qualified for employment as an LPN.[42] Specifically, Plaintiff argues that the DOT job description defines LPN work as "medium work" which entails exerting 20 – 50 pounds of force occasionally; 10-25 pounds of force frequently; and up to 10 pounds of force constantly.[43] Under these requirements, Plaintiff asserts that she is qualified for employment as an LPN, given her restrictions.

---

[38] Christus LPN Job Description at "Exhibit F" to Deposition of King [R. 17-8].
[39] R. 17-1 at p. 4 citing Deposition of King at 27 – 29 and Exhibit F.
[40] Id.
[41] R. 17-1 at pp. 10-11.
[42] R. 19 at pp. 11-12.
[43] Id.

Christus responds by arguing that a DOT job description may not be used to supplant its own job description, which contains more strenuous requirements.[44]  Christus cites <u>Still v. Freeport-McMoran, Inc.</u>, in which the Fifth Circuit Court of Appeals described the second element of an ADA claim as a showing that the plaintiff "is a qualified individual for the job to which he is applying[.]"[45]  Christus asserts that since Plaintiff sought employment at Christus as an LPN, its own job description must control the issue of qualification.

Christus' argument in this case is that the lifting and carrying requirements described in its LPN job description are "essential functions" for that position within its hospital.  Regulations enacted in conjunction with the ADA define "essential function" as "the fundamental duties of the employment position the individual...holds or desires."[46]  The regulations further provide that evidence of whether or not a particular function is "essential" includes, but is not limited to, "[t]he employer's judgment as to which functions are essential; [w]ritten job descriptions prepared before advertising or interviewing applicants for the job; and [t]he amount of time performing the function...[.]"

Given the clear language of the statute requiring that Plaintiff demonstrate that she was qualified for "the job" and not "similar employment" or "equivalent employment" in order to make out a prima facie case and jurisprudence affirming the deference afforded to an employer's assessment of what constitutes an essential function, particularly when contained in a written job description, we find that Plaintiff fails to show that she was qualified for employment as an LPN at Christus.  Though not determinative as to this issue, we also note that

[44] R. 21 at pp. 4-5.
[45] 120 F.3d 50, 51 (5th Cir. 1997).
[46] 29 C.F.R. 1630.2.

Plaintiff's own physician, Dr. Brunet, did not find Plaintiff to be able to perform the duties of an LPN at Naomi Heights Nursing Home even though that job description carried far less stringent lifting requirements ("up to 40 [pounds] rarely").[47]  Thus, Plaintiff has clearly failed to establish that the DOT description is more applicable to her qualifications than that of the jobs she actually sought in this case.

Christus also asserts that Plaintiff is estopped from claiming she is qualified for the job at issue by virtue of her application for and determination of disability from the Social Security Administration.[48]  Christus points out that Plaintiff's application for benefits claims that she has been unable to work since December of 2010.[49]  As asserted by Christus, without detailed explanation, Plaintiff's attestation that she is "unable to work" is contradictory to her prima facie burden in this matter.[50]  Plaintiff offers no such explanation.[51]

Since Plaintiff fails to demonstrate the essential statutory element of qualification, the court need not address remaining elements, as failure to prove qualification is fatal to her ADA and LADL claims in this case.  We will continue our analysis, however, out of an abundance of caution.

Christus asserts that Plaintiff also fails to show that she was not offered "reasonable accommodation" in response to her known disability.  Christus cites its grant of temporary light duty status, its two (2) extensions of leave and its effort in assisting Plaintiff to find other employment with the aid of a vocational rehabilitation expert as evidence of its reasonable accommodations to Plaintiff.

---

[47] R. 17-15.
[48] R. 17-1 at pp. 14-15.
[49] Application for SSDI benefits at R. 17-16.
[50] Cleveland v. Policy Management Systems Corp., 526 U.S. 795 (1999).
[51] R. 19 at pp. 19-20.

Plaintiff argues that the EEOC's finding forecloses any argument by Christus that it fulfilled its duty under the ADA.  Specifically, Plaintiff asserts that Christus was unreasonable in its denial of Plaintiff's third request for additional leave because it was merely a request for two (2) additional weeks and would have caused no undue hardship upon Christus.[52]  Plaintiff also seems to suggest, though vaguely, that Christus would have, upon her return owed her the reasonable accommodation of continued employment as an LPN, but without any lifting requirements that violated Dr. Brunet's post-surgical restrictions.[53]

Laying these arguments out for analysis, we find that they are substantially related to the issue of Plaintiff's qualification for LPN work under Christus' job description.  It is well established that no employer is required to remove or reallocate essential functions of any job as a "reasonable accommodation" under the ADA.[54]  Thus, Christus would not have owed Plaintiff her requested accommodation upon her return to work, rendering her unable to perform the essential task of lifting and carrying under the job description.  By extension, Christus did not owe Plaintiff a third extension of leave, particularly when, as noted by Christus, Plaintiff's leave request did not specify any anticipated return to work or request any specific amount of additional leave.  The status report at issue merely notes that Plaintiff has an appointment in two (2) weeks for an FCE.  Plaintiff's absence from work beyond the leave allowed to her under the FMLA is not a "reasonable accommodation" to which she was entitled and, thus, Christus had no duty to grant her third such request.

---

[52] R. 19 at p. 17.
[53] Id. at p. 19.
[54] 29 C.F.R. § 1630.2(o); Bradley v. Univ. of Tex., M.D. Anderson Cancer Center, 3 F.3d 922, 925 (5th Cir. 1993), cert. denied, 510 U.S. 1119 (1994).

Though the finding of the EEOC that Christus' failure to grant Plaintiff's request is entitled to be considered as evidence, the court affords it no weight in this case, as it clearly contravenes applicable law and jurisprudence as explained above.  Moreover, it fails to analyze the issue of qualification which, as we have discussed, is pivotal in this matter.

Accordingly, we find that Plaintiff fails to demonstrate that she was deprived of reasonable accommodation in this case, as Plaintiff offers no allegation of any reasonable accommodation which would have enabled her to perform the essential task of lifting and carrying under Christus' LPN job description.

The court notes that Christus offers its motion not only in regard to Plaintiff's failure to accommodate claims, but also in regard to any purported disparate treatment claims under federal and state law.[55]  The court has received no argument by Plaintiff in support of any disparate treatment claims in this case and, therefore, this portion of Christus' motion is deemed moot.

### III.   CONCLUSION

Having carefully considered the arguments of the parties, as well as the evidence, law and jurisprudence presented in conjunction with the instant motion, the court finds that Plaintiff fails to establish a prima facie case of disability discrimination under the ADA and LADL. Specifically, we find that Plaintiff fails to show that she was qualified for employment at Christus as an LPN or that she was not offered reasonable accommodation following her injury, surgery and post-surgical leave.   Based upon these findings, the court will grant Christus'

---

[55] R. 17-1 at pp. 20-22.

motion for summary judgment, dismissing all claims by Plaintiff against all defendants in this matter.[56]

The court will issue a judgment in conformity with these findings.

Alexandria, Louisiana
August 5, 2015

_____
JAMES T. TRIMBLE, JR.
UNITED STATES DISTRICT JUDGE

---

[56] We express no opinion regarding Plaintiff's assertion of single entity status among defendants, but find that, for the reasons expressed above, dismissal is universally appropriate as to defendants in this case, leaving arguments over factors weighing for and against a finding of employer status as to Christus Health and Christus Health Central Louisiana moot.